**CITY OF CLEVELAND, Plaintiff,**

v.

**DEUTSCHE BANK TRUST COMPANY, et al., Defendants.**

**No. 1:08 cv 0139.**

United States District Court, N.D. Ohio, Eastern Division.

Aug. 8, 2008.

Mark A. Stanton, Short, Shepherd & Stanton, Ellen M. Kramer, James B. Rosenthal, Joshua R. Cohen, Cohen, Rosenthal & Kramer, Gary S. Singletary, Michael F. Cosgrove, Robert J. Triozzi, City of Cleveland, Department of Law, Cleveland, OH, Judith B. Goldstein, Equal Justice Foundation, Columbus, OH, for Plaintiff.

Hugh E. McKay, Tracey L. Turnbull, Porter, Wright, Morris & Arthur, Joseph J. Jerse, Robert D. Kehoe, Kehoe & Associates, Andrew G. Fiorella, Geoffrey J. Ritts, David F. Adler, John M. Newman, Jr., Robert S. Walker, Jones Day, Robert N. Rapp, Scott C. Matasar, Calfee, Halter & Griswold, David J. Hooker, Kip T. Bollin, Robin M. Wilson, William W. Jacobs, Thompson Hine, David E. Kitchen, Louis A. Colombo, Baker & Hostetler, Majeed G. Makhlouf, Stephen M. O'Bryan, Taft, Stettinius & Hollister, Michael N. Ungar, Richik Sarkar, Shannan L. Katz, Ulmer & Berne, Joseph T. Dattilo, Michael P. O'Donnell, Patricia A. Screen, Brouse McDowell, Dan L. Makee, McDonald Hopkins, Adrienne B. Kirshner, Anthony R. Petruzzi, Patrick M. McLaughlin, McLaughlin & McCaffrey, Christine M. Garritano, Donald S. Scherzer, Robert B. Casarona, Roetzel & Andress, Cleveland, OH, Bernard E. Lesage, Buchalter Nemer, Los Angeles, CA, Joanne N. Davies, Buchalter Nemer, Irvine, CA, Shawn J. Organ, Jones Day, Columbus, OH, Andrew L. Sandler, Benjamin B. Klubes, Victoria Holstein–Childress, Skadden, Arps, Slate, Meacher & Flom, Charles E. Davidow, Paul, Weiss Rifkind, Wharton & Garrison, Thomas M. Hefferon, Goodwin Proctor, Brian P. Brooks, O'Melveny & Myers, Keith Noreika, Robert D. Wick, Stuart C. Stock, Theodore P. Metzler, Covington & Burling, Washington, DC, Jay B. Kasner, Skadden, Arps, Slate, Meagher & Flom, Colleen J. O'Loughlin, Jeffrey Q. Smith, Scott E. Eckas, McKee Nelson, Christopher J. Dunne, Gandolfo V. Diblasi, Michael T. Tomaino, Jr., Patrice A. Rouse,

Richard H. Klapper, Sullivan & Cromwell, New York, NY, James W. McGarry, Goodwin Procter, Boston, MA, James S. Wertheim, McGlinchey Stafford, Beachwood, OH, L. Clifford Craig, W. Stuart Dornette, Taft, Stettinius & Hollister, Cincinnati, OH, Martin M. Loring, Husch Blackwell Sanders, Kansas City, MO, John F. Marsh, Hahn, Loeser & Parks, Akron, OH, Elizabeth McKeen, O'Melveny & Myers, Newport Beach, CA, David H. Kistenbroker, Pamela G. Smith, Theresa L. Davis, Katten Muchin Rosenman, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

SARA LIOI, District Judge.

This matter is before the Court on motions filed by Plaintiff City of Cleveland ("Plaintiff" or "the City") to remand the case to state court (Doc. No. 5) and for leave to file an amended complaint. (Doc. No. 74.) Both motions have been briefed fully and are ripe for decision.

## I. Factual and Procedural Background

The City filed the complaint in this case in the Cuyahoga County Court of Common Pleas on January 10, 2008. The complaint stated a single claim of public nuisance against a total of twenty-one defendants. Of the defendants named in the original complaint, none was a citizen of Ohio.

Defendant Lehman Brothers Holdings, Inc., ("Lehman") filed a notice of removal on January 16, 2008. (Doc. No. 1.) The notice of removal invoked the Court's diversity jurisdiction, 28 U.S.C. § 1332(a). At the time the action was removed, Leh-

man filed a notice of consent to removal by co-defendant Bank of America Corporation. (Doc. No. 1–3, Notice of Removal, Ex. B.)

Wasting no time, the City filed a motion to remand on January 17, 2008. The City's motion to remand asserted that Lehman's removal of the action was improper because Lehman failed to obtain the consent to removal of all defendants prior to filing the notice, and provided no explanation for this failure. By January 28, 2008, all of the remaining defendants [1] filed consents to the removal.

On February 4, 2008, the City filed its motion for leave to amend the complaint. The amended complaint seeks to add JP Morgan Chase Bank, N.A. ("JP Morgan"), a citizen of Ohio, as a party defendant. Defendants and JP Morgan opposed the motion for leave.

On February 29, 2008, oral argument was held on the motion to remand. After oral argument, the City filed a supplemental brief in support of the motion to remand, adding to its previous arguments a new challenge to the validity of the consents to removal filed by certain defendants.[2] The Court subsequently requested, and the parties filed, supplemental briefs addressing specific aspects of the consents. (Doc. Nos. 166, 167.)

## II. Law and Analysis

### A. Motion to Remand

▮▮▮ Any civil case filed in state court may be removed to federal court if the case could have been brought originally in federal court. 28 U.S.C. § 1441(a); *Cater-*

---

**1.** Defendant HSBC Holdings, Plc, never filed a consent, but never was properly served with the complaint, and has since been dismissed voluntarily from the action.

**2.** The existence, but apparently not the substance, of this argument first was raised at the oral argument. This issue was not raised in any of the several briefs filed by the City prior to the argument.

*pillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The defendant bears the burden of establishing that removal is proper. *Rogers v. Wal–Mart Stores, Inc.,* 230 F.3d 868, 871 (6th Cir.2000). All doubts regarding the removal petition must be resolved against removal. *Queen ex rel. Province of Ont. v. City of Detroit,* 874 F.2d 332, 339 (6th Cir.1989). Federal jurisdiction in this case is based on diversity of citizenship. There is no question that, at least with respect to the original complaint, which is operative at present, diversity is complete and the amount in controversy exceeds $75,000. Thus, the issues regarding the motion to remand go to the propriety of the removal petition, not to subject matter jurisdiction.

▮ To remove a civil action to federal court, the defendant or defendants seeking to do so must file a notice of removal signed pursuant to Rule 11 and containing a short and plain statement of the grounds for removal. 28 U.S.C. § 1446(a). Removal generally requires unanimity among the defendants. "This rule of unanimity demands that all defendants must join in a petition to remove a state case to federal court." *Loftis v. United Parcel Serv., Inc.,* 342 F.3d 509, 516 (6th Cir.2003) (citing *Brierly v. Alusuisse Flexible Packaging, Inc.,* 184 F.3d 527, 533–34 n. 3 (6th Cir. 1999), *cert. denied,* 528 U.S. 1076, 120 S.Ct. 790, 145 L.Ed.2d 667 (2000)). All defendants in the action are required to "join in the removal petition or file their consent to removal in writing within thirty days of receipt of (1) a summons when the initial pleading demonstrates that the case is one that may be removed, or (2) other paper in the case from which it can be ascertained that a previously unremovable case has become removable." *Id.* (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 354, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999)). "Failure to obtain

unanimous consent forecloses the opportunity for removal under Section 1446." *Id.*

Considering that the City filed its motion to remand just a day after the notice of removal was filed, asserting that fewer than all Defendants consented to the removal, the motion clearly was premature at that time. The thirty-day consent period had not elapsed; indeed, it began to run only a day earlier. However, the thirty-day period since has expired, and the City continues to press the remand issue. The motion is therefore ripe.

The City concedes that all defendants now have filed consents to the removal, and that all did so within thirty days of being served with the summons. Thus, it would appear that Defendants have complied with the rule of unanimity. The City, however, maintains several additional objections to the notice of removal. Its objections are highly technical and, as explained *infra,* the City waived those objections it failed to raise within thirty days of removal. In any event, none of the City's objections finds sufficient support in the law. Put simply, the City has attempted, unsuccessfully, to wield the rule of unanimity for far more than it is worth. For the reasons explained herein, the City's motion to remand is denied.

1. **At the Time the Notice of Removal Initially Was Filed, Lehman Had No Duty to Explain Why Fewer than All Defendants Filed Consents to Removal**

▮ The City argues that Lehman, as the removing defendant, had a duty to explain in the notice of removal why all the defendants had not provided consent to removal at that time, and that its failure to do so represents a fatal flaw mandating remand. This is the only argument raised in the City's original brief in support of the motion (Doc. No. 6) or in its reply. (Doc.

No. 91). Accordingly, it is the only argument that was raised in a timely manner. The argument is without merit. Under the circumstances presented, no such requirement exists.[3]

The City's support for its argument comes from a footnote in an unpublished decision of the Sixth Circuit issued in 1994, *Klein v. Manor Healthcare Corp.*, 19 F.3d 1433, 1994 WL 91786, at *9 n. 8 (6th Cir.1994) (unpublished). The footnote excerpt cited by the City states: "A petition for removal filed by less than all defendants is considered defective if it does not contain an explanation for the non-joinder of those defendants." *Id.* (citing *Courtney v. Benedetto*, 627 F.Supp. 523, 525–26 (M.D.La.1986)). The City's use of this citation, however, is misleading.

According to the City, this means that unless the removing defendant explains in the notice of removal the reasons why the written consent of any of its co-defendants is not attached to the notice, the removal is defective and the case must be remanded to state court. As any honest discussion of *Klein* would have revealed, however, the Sixth Circuit expressly rejected this argument in the *Klein* case itself. The footnote cited by the City is part of an explanation of historical precedent on the scrutiny applied to technical issues regarding removal. This explanation highlights a shift in the law from the traditionally strict application of the procedural requirements of the removal statute to a less formalistic interpretation. The court stated, "[i]n recent years, this court has expressed a reluctance to interpret statutory removal provisions in a grudging and rigid manner, preferring instead to read them in a light [ . . . ] more consonant with a modern understanding of pleading practices." *Id.* at *4. The plaintiff in *Klein* made the same argument now asserted by the City, that the removing defendant's failure to explain in the notice of removal the failure of one of the co-defendants to join in the petition rendered the removal ineffective.[4] The Sixth Circuit repudiated this argument, concluding that

> [t]o preclude federal jurisdiction in this instance [ . . . ] would contravene the spirit of the more recent case law on the subject. We decline to so hold, and, accordingly, we reject plaintiff's argument founded on defendants' failure to initially explain Vadis's failure to join in his co-defendants' removal petition.

*Id.* at *5. The City's position is expressly contradicted by the holding of the very case from which it derives.

All the other cases cited by the City are distinguishable on one or more grounds, most notably that the removing defendants in those cases failed to obtain the consent of each of its co-defendants,[5] and/or ob-

---

**3.** Certainly, where fewer than all defendants consent within thirty days, to avoid remand the removing defendant must offer an explanation as to why the non-consenting defendants did not join in the removal. Examples of such explanations are that the non-consenting defendant is a nominal party, was not properly served, or where the removed claim is a separate and independent claim that has been joined with an otherwise nonremovable claim, and the non-joining defendant is a party only to the nonremovable claim. *See Klein*, 1994 WL 91786, at *9 n. 8. None of these examples capture the situation before the

Court, given that all Defendants timely filed written consents to the removal.

**4.** The plaintiff in *Klein* had better facts than the City because in *Klein*, the co-defendant that failed to join in the removal initially did not file a written consent until more than thirty days after the case was removed. By contrast, in this case, all defendants timely filed their written consent.

**5.** *See White v. Bombardier Corp.*, 313 F.Supp.2d 1295, 1299 (N.D.Fla.2004); *Pianovski v. Laurel Motors*, 924 F.Supp. 86

tained such consent more than thirty days after removing the case.[6] In any event, no case decided by any court within the Sixth Circuit since *Klein* has been remanded based on a removing defendant's failure to state in the removal notice its reasons for failing to obtain unanimous consent to removal, where all codefendants ultimately expressed written consent to removal within thirty days of service. Accordingly, the City's argument must be rejected.[7]

## 2. All Defendants Validly and Effectively Consented to Removal

The City's other arguments in support of remand concern the validity of the written consents to the notice of removal filed by Lehman's co-defendants. The City takes the position that the written consents filed by certain defendants are invalid because the writings were signed (a) by someone other than the respective defendant's outside litigation counsel; and/or (b) by an individual without authority to express consent to removal on behalf of the party defendant. Whatever the merits of these arguments (and for the reasons explained *infra* they have none) the City waived them by failing to raise these issues timely.

### a. The City Waived Any Arguments in Support of Remand Not Raised Within Thirty Days of Removal

■ By statute, a motion to remand a case on the basis of any defect other than lack of subject matter jurisdiction must be made within thirty days after the filing of the notice of removal. 28 U.S.C. § 1447(c). A motion to remand on the basis of an alleged defect in the removal procedure is distinguished from a motion to dismiss based on lack of subject matter jurisdiction. *See Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 62, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). The latter can be raised at any time, but the former must be raised within thirty days of the notice of removal or else it is waived. *Page v. City of Southfield,* 45 F.3d 128, 133 (6th Cir. 1995).

■ Plaintiff challenges the validity and effectiveness of written consents to removal filed by nine defendants. The last of these was filed January 22, 2008. Accordingly, the City was required to raise any objection no later than February 21, 2008. Although the City filed its motion to remand before this date, and asserted that the removal was improper because it was not joined by all Defendants (i.e., the argu-

(N.D.Ill.1996); *Yount v. Shashek,* 472 F.Supp.2d 1055 (S.D.Ill.2006).

**6.** *See Andreshak v. Serv. Heat Treating, Inc.,* 439 F.Supp.2d 898, 902 (E.D.Wis.2006) (failure to file written consent of co-defendant within thirty days of removal rendered notice of removal fatally defective); *see also Hicks v. Emery Worldwide, Inc.,* 254 F.Supp.2d 968, 977 (S.D.Ohio 2003); *Fenton v. Food Lion, Inc.,* No. Civ. A. 3:02CV00017, 2002 WL 1969662, at *4 (W.D.Va. Aug. 23, 2002); *Mayers v. Connell,* 651 F.Supp. 273, 275 (M.D.La. 1986).

**7.** The fallacy of the City's argument is further illustrated by the law that allows a removing defendant to amend the removal petition

within thirty days of its filing to include reasons for the exclusion of co-defendants from the removal petition. *Brodar v. McKinney,* 378 F.Supp.2d 634, 638 (M.D.N.C.2005) (citing *Egle Nursing Home, Inc. v. Erie Ins. Group,* 981 F.Supp. 932, 935 (D.Md.1997)). Under this precedent, Lehman had up to thirty days to amend the removal petition to include reasons explaining why any of its codefendants had not consented. But the need for such an amendment never arose because all Defendants timely filed their written consents to removal. Thus, the City's position is further undermined by close reading of cases the City itself cited in support of its position.

ment discussed and rejected *supra* in section II.A.1), the City did not challenge the validity of the written consents at that time, nor did it raise the issue in any of the numerous briefs regarding the motion to remand filed during this period. The first mention of the issue by the City occurred at the oral argument on the motion to remand, which was held on February 29, 2008—more than thirty days after the case was removed and the last contested consent was filed.

The City had numerous opportunities to raise this issue timely. Indeed, it filed a total of four briefs in support of its motion to remand prior to the oral argument. (Doc. Nos. 6, 34, 91, 109.) At the oral argument, counsel for the City effectively conceded that the City was aware of this purported defect, but did not assert it in any of its filings in an effort to gain tactical advantage.[8] This Court does not look favorably upon such maneuvers. The last of the challenged consent forms was filed on January 22, 2008. As is evident from the City's multiple filings in support of its motion to remand, during this time period, the City actively was searching for support for its position. The City nevertheless believed it was appropriate to withhold this issue until the oral argument. The delay is unjustifiable. If the City sought to challenge the removal on the ground that the written consents were not signed by individuals with proper authority, it was required to raise this issue, at the very latest, within thirty days of the filing of the last allegedly improper consent. The City neglected to do so, and its failure effectuated a waiver of this argument.[9] The City cannot plausibly assert that merely by filing a motion to remand and objecting to removal generally, it preserved the whole universe of available arguments concerning the removal procedure. *See Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 595 n. 4 (6th Cir.2008) (citing *Renkel v. United States*, 456 F.3d 640, 642 n. 1 (6th Cir.2006)) (raising argument for first time in reply brief resulted in waiver).[10] Allowing the City to do this would eviscerate the explicit statutory requirement that any defect be raised within thirty days and, more generally, would encourage sandbagging and litigation by ambush, tactics which this Court will not condone.

---

**8.** *See* Transcript of Motion Hearing Proceedings held on Feb. 29, 2008 before the Hon. Donald C. Nugent, at 30–32:

Pl.'s Counsel Cohen: I'm guilty Your Honor. I didn't raise in prior filings the failure of this lack of attestation. I didn't do it because those prior filings were made within the 30–day window which would have given the other side an opportunity to correct the deficiency. I have no interest in giving the other side heads up as to the deficiencies, nor do they need heads up about that.

[* * *]

The Court: [. . .] this is really the first time now we're hearing that there's a deficiency or defect in the consent.

Cohen: Right.

**9.** The City boldly asserts that "[o]nly a 'clear, unequivocal, and decisive' act can effect a waiver[,]" citing a case, *715 Spencer Corp. v. City Envtl. Servs., Inc.*, 80 F.Supp.2d 755 (N.D.Ohio 1999), having nothing to do with procedural defects in a notice of removal. This simply is not true with respect to objections to removal procedure. The law is well-settled that a party waives any objection it may have in this regard by failing to raise the issue. *See Loftis*, 342 F.3d at 516–17; *Page*, 45 F.3d at 133. No action is needed.

**10.** Here, not only did the City fail to raise the issue in its original motion, it did not bring it up in its reply. The argument was raised for the first time informally at oral argument on the motion, and was first put into writing in the City's third brief on the subject (Doc. No. 116), filed nearly two months after the initial motion to remand.

### b. Lehman's Co–Defendants Were Not Required to File Separate Written Consents to Removal and Complied with the Rule of Unanimity by Opposing the Motion to Remand

■ Even if the merits of the City's arguments are considered, the City fails to establish a creditable basis for remanding the case to state court. At the outset, the City's contest of the validity of the written consents fails because, under Sixth Circuit authority, defendants can express consent to removal without making any filing in writing, but merely by joining in opposition to a motion to remand. In *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195 (6th Cir.2004), the plaintiff sued four defendants: two corporations (AutoAlliance and AAI) and two individuals (Mssrs. Childress and Kelly). The two corporate defendants and Mr. Childress filed a timely notice of removal, in which they included a statement indicating that counsel for Mr. Kelly concurred in the removal. *Id.* at 201. Kelly's counsel did not sign the notice of removal or file any other written statement expressing Kelly's consent. On appeal, the plaintiff argued that the district court erred by failing to remand the case because the removal did not comply with the rule of unanimity. The Sixth Circuit rejected this argument on several bases.

The Court in *Harper* noted that 28 U.S.C. § 1446(a) requires that a notice of removal be signed pursuant to Rule 11, but rejected the plaintiff's contention that Rule 11 does not authorize any one party to make representations or file pleadings on behalf of another. *Id.* Instead, the Sixth Circuit held that "[n]othing in Rule 11 [. . .] required Kelly or his attorney to submit a pleading, written motion, or other paper directly expressing [his] concurrence or prohibited counsel for the other defen-

dants from making such a representation on Kelly's behalf." *Id.* at 201–02. The court was satisfied by the representation contained in the notice of removal showing that the removing defendants had obtained Kelly's consent, reasoning that if counsel for the removing defendants had "misrepresented Kelly's concurrence in the removal, no doubt Kelly would have brought this misrepresentation to the court's attention and it would have been within the district court's power to impose appropriate sanctions, including a remand to state court." *Id.* at 202. Thus, *Harper* stands for the proposition that a party seeking to remove a case to federal court need do no more than obtain the consent of his fellow defendants and make a timely representation of that consent to the court. The individual co-defendants are not required to do anything (other than to indicate their consent verbally to the removing defendant's lawyer and, if the defendant is a corporation, do so through an attorney). In this case, Lehman's co-defendants went much further, each filing a separate notice of consent to removal within the requisite thirty-day time period. In light of *Harper*, the City's hyper-technical disputes over individual consents are irrelevant, given that Lehman could have accomplished a valid removal merely by representing to the Court that its co-defendants consented to the removal—all of which clearly do consent to the removal and have gone so far as to file written consents thereto.

■ In addition, the court in *Harper* added that "the fact that Kelly subsequently opposed Harper's motion to remand cured any purported defect in the removal petition." *Id.* (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 164 (6th Cir.1993); *Klein*, 1994 WL 91786, at *5). Therefore, albeit in *dicta*, *Harper* supports the legal proposition that a co-defendant can express its consent to removal merely

by opposing a plaintiff's motion to remand. Here, Defendants unanimously opposed the City's motion (Doc. Nos. 68, 71, 89), and did so within thirty days of removal. The City offers no rejoinder to this argument.[11] Accordingly, under *Harper*, this consensus in opposition to remand, together with the timely written consents filed by all Defendants, is more than sufficient to validate the removal and defeat the City's motion.

### c. The Written Consents to Removal Filed by Defendants Were Valid and Effective

However, even if each defendant was required separately to express its consent to removal in writing (which, under *Harper*, they are not), and even if their unified opposition to remand was not sufficient to defeat the City's motion (which, under *Harper*, it is), and the Court must determine whether each individual defendant validly consented to removal in writing, the Court finds that they all have done so.

### i. In-house Counsel May Authorize Removal

■ The City challenges the validity of the written consents to removal filed by nine of the defendants in this action on the basis that such consents were not signed by outside counsel. The City's support for this argument comes from a handful of opinions (only one of which is published) from various district courts outside the Sixth Circuit. *See Forth's Foods, Inc. v. Allied Benefit Admin., Inc.*, No. 3:07–0670,

2008 WL 88610 (S.D.W.Va. Jan. 7, 2008); *Parr v. Perlinger*, No. 06–457 (DSD/SRN), 2006 WL 1472622 (D.Minn. May 23, 2006); *Codapro Corp. v. Wilson*, 997 F.Supp. 322 (E.D.N.Y.1998); *Manshum Enters., Inc. v. Nat'l Bus. Info. Corp.*, No. 606CV533–ORL–28JGG, 2006 WL 2406563 (M.D.Fla. Aug. 18, 2006); *Topside, Inc. v. Topside Roofing & Siding Constr., Inc.*, No. Civ. 01–0038 ADM/AJB, 2001 WL 420159 (D.Minn. Apr. 23, 2001). The questionable precedential value of these decisions notwithstanding, the basis for these decisions is rather well-established and applies in this circuit; that is, that a corporation cannot appear in federal court *pro se*, but must be represented by counsel. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993); *Doherty v. Am. Motors, Inc.*, 728 F.2d 334, 340 (6th Cir.1984). All of the cases cited by the City illustrate this well-settled principle.

In *Parr*, the plaintiff brought suit against numerous defendants, a group which included several individuals and corporations. One of the individuals removed the action to federal court and asserted consent on behalf of both herself and at least one of the corporations. The removal was not timely, and therefore was improper. 2006 WL 1472622, at *4. In addition, the district court concluded that because the removing defendant was not an attorney, she could not represent the corporation, and therefore could not consent to removal on behalf of the corpora-

---

11. The City does assert conclusorily that defendant The Bear Stearns Companies ("Bear Stearns") did not consent to removal by joining in Lehman's opposition to the motion to remand because by joining Lehman's opposition, Bear Stearns simply endorsed the statement in Lehman's brief that Bear Stearns filed a consent to removal, which the City contends Bear Stearns in fact did not do.

This argument is so hyper-technical that it vanishes completely upon examination of its logic. Whatever the merits of the City's convoluted factual argument about the validity of the consent filed by Bear Stearns, there is no legal support for the City's claim that Bear Stearns's joinder in the opposition to remand is somehow insufficient, under *Harper*, to express its consent to removal.

tion. *Id.* It is clear from the decision in *Parr* that the corporation was not represented by counsel, either at the time the (patently untimely) notice of removal was filed, or at any subsequent point.

The district court's decision in *Topside* is materially identical to *Parr.* A defendant, proceeding *pro se*, filed a notice of removal purporting to consent on behalf of himself and a corporation he owned. The notice of removal was, *inter alia*, untimely.[12] 2001 WL 420159, at *3. As in *Parr*, the district court concluded that the *pro se* defendant, who was not an attorney, could not represent the corporation in federal court, and therefore the corporation could not consent to removal without representation by a licensed attorney. *Id.* Accordingly, the notice of removal was defective, and the district court granted the plaintiff's motion to remand.

In *Codapro*, a single individual defendant, a Mr. Boyd, filed a notice of removal and stated in the notice that it was filed on behalf of all eighteen defendants in the action, which included several corporations. 997 F.Supp. at 324. Boyd was an attorney (and a defendant), but none of the other defendants filed anything with the court indicating that they joined in the removal, and none entered a notice of appearance. *Id.* The court in *Codapro* noted that corporations cannot proceed *pro se*, and the failure of the numerous corporate defendants to indicate consent to removal required remand. *Id.* at 326. The court also rejected Boyd's contention that he was authorized to act on behalf of all other defendants, finding that his appearance was as a defendant, not as a lawyer, and noting the absence of any indication by any other defendant that they had retained Boyd to act as counsel in the case. *Id.* at 326–27.

Similarly, in *Forth's Foods*, the district court rejected a defendant's argument that a corporate defendant could consent to removal through a non-attorney representative. The defendant sought to analogize to *Foley v. Allied Interstate, Inc.*, 312 F.Supp.2d 1279 (C.D.Cal.2004), in which a consent to removal signed by the company's general counsel was held to be sufficient even where the corporation had retained outside counsel to handle the matter. The court in *Forth's Foods* spurned the analogy, concluding that it "misse[d] the primary point-that the general counsel is an *attorney* authorized to represent the corporation." 2008 WL 88610, at *1.

Likewise, *Manshum Enters.*, to the extent it is relevant at all,[13] involved an attempt by a *pro se* defendant to remove a case on behalf of himself and a corporate defendant acting without counsel merely by stating in the removal notice that he was acting with the consent of the corpo-

---

**12.** In fact, the same defendant had removed the case to federal court once previously, and that initial removal itself was untimely. *Topside*, 2001 WL 420159, at *3.

**13.** The opinion cited by the City deals almost entirely with issues relating to the plaintiff's request for attorney's fees based upon improper removal. The only arguably relevant portion of the opinion is the initial background section, which discusses the court's earlier opinion finding that remand was appropriate because the removal attempt was defective. Thus, the City should have cited the earlier opinion, *Manshum Enterprises, Inc. v. National Business Information Corpo-*

*ration*, 2006 WL 2194383 (M.D.Fla. Aug. 18, 2006) explaining this finding. Even if it had done so, however, *Manshum Enters.* does not assist the City because the case merely illustrates the uncontroversial principle that a corporation cannot appear (or effect removal) *pro se*, which is not an issue in this case. It is also worth noting that the discussion of the procedural defects in the notice of removal in *Manshum Enters.* is *dicta* because the district court first determined that it lacked independent subject matter jurisdiction over the claims asserted in the complaint. *See* 2006 WL 2194383, at *4.

rate defendant. 2006 WL 2406563, at *1. As a consequence, the district court remanded the case.

■ Thus, the cases cited by the City offer no support for its assertion that an effective removal could be consented to only by a defendant's outside litigation counsel. Those cases merely stand for the proposition that a corporation cannot consent to removal through a non-lawyer representative, which is consonant with the axiom that a corporation cannot appear in federal court except through an attorney. This is simply not an issue in this case. There is no question that each of the challenged consents was signed by an attorney. Indeed, the nine individuals who signed the consents submitted declarations stating that they are attorneys and that they each had authority to consent to removal on behalf of their respective principals. (Defs.' Supp. Mem. in Opp. to Mot. for Remand, Doc. No. 132, Ex. C.) Accordingly, this case is analogous to *Foley*, where the district court concluded that "a corporation may consent to removal by some timely written indication from its general counsel." 312 F.Supp.2d at 1284. The Court finds that the consents to removal filed by Defendants' various in-house attorneys, each of whom possessed the authority to take such action, timely established valid consent to the notice of removal by all Defendants.

#### ii. All Consents Were Filed by Individuals Possessing Proper Authority

Unsatisfied with the consents and supporting declarations submitted by certain defendants, the City challenges the authority of certain defendant entities, and the individuals acting on their behalf, to approve removal. Specifically, the City asserts that the consents to removal filed by defendants [14] The Bear Stearns Companies ("Bear Stearns"), Credit Suisse (USA) ("Credit Suisse"), Citigroup, Inc. ("Citigroup"), and Option One Mortgage Corporation ("Option One") were invalid. As explained previously, the City waived these arguments by failing to raise them in a timely fashion.[15] Moreover, in light of *Harper*, examination of the individual written consents is not necessary because no writing is required and all Defendants unequivocally opposed the City's motion to remand. Even if considered, however, these arguments lack merit.

#### 1. Bear Stearns

In a perfect exemplar of the type of hyper-technicalities upon which the City grounds its contentions in support of the motion to remand, the City maintains that defendant Bear Stearns did not consent properly to removal. This argument is wholly specious. The consent form filed by Bear Stearns was titled "Consent to Removal of Defendant Bear Stearns Companies." The form was signed by attorney Daniel Taub, Senior Managing Director, Legal Department, Bear, Stearns & Co., Inc. In its complaint, the City named "The Bear Stearns Companies" as a defendant. It is undisputed that no such legal entity exists. The Bear Stearns Companies, Inc.,

---

14. Here, the Court refers to the defendants whose consents the City is challenging by the business name set forth in the caption of the City's complaint, and abbreviates that name for general reference. Where necessary, the Court uses the full and proper name of an entity and/or assigns a different abbreviation. It is undisputed, at least from a technical standpoint, that the City named Bear Stearns and Credit Suisse improperly.

15. All of the arguments discussed in this section were raised for the first time long after the thirty-day period for asserting procedural deficiencies in the removal notice expired.

is an existing legal entity, and is the parent holding company of the operating subsidiary, Bear, Stearns & Co., Inc. Taub's uncontroverted declaration states that he possessed authority to consent to removal on behalf of both The Bear Stearns Companies, Inc., and Bear, Stearns & Co., Inc. (Taub Decl., Doc. No. 167–2, ¶ 3.)

Nevertheless, the City argues that Taub could not consent on behalf of the named defendant, The Bear Stearns Companies, and therefore his consent is invalid for one of two reasons: either because he lacked authority to act on behalf of the named defendant, or because a subsidiary, as a legal matter, cannot consent to removal on behalf of its parent.

 The first reason offered by the City leads to one of two conclusions, neither of which supports its position. On the one hand, either The Bear Stearns Companies, which does not exist, is not a proper defendant in this action because it was not named and served properly, in which case no consent is needed. Or, on the other hand, rather than merely ignoring the complaint, Bear Stearns justifiably responded to the complaint on behalf of existing legal entities by filing its consent to removal. Taub possessed authority to consent on behalf of either The Bear Stearns Companies, Inc., or Bear, Stearns & Co., Inc. That the former is the parent company, and the latter is a subsidiary, is of no moment because the City managed not to sue either entity. Thus, whether the City intended to sue the parent or the subsidiary, removal was proper because

Taub was authorized to remove on behalf of both entities. Moreover, even if Taub only possessed authority to remove on behalf of the subsidiary, from which he draws his title, Bear Stearns made a reasonable guess as to the entity the City was attempting to sue, and rather than ignore the suit on the basis that it was not named properly, removed the action based upon that guess.[16] That the City now asserts that it intended to name the parent company is irrelevant. Bear Stearns was under no duty to correctly ascertain which entity the City intended to sue, and had no basis for doing so. It was the City's own erroneous pleading which forced Bear Stearns to make such a guess in the first place, and the City has proffered no authority in support of the proposition that an incorrect guess, under such circumstances, can invalidate a removal attempt.

Secondly, the City's contention that Bear Stearns's removal efforts were ineffective because a subsidiary cannot effect removal on behalf of its parent has no application here. The cases cited by the City in support of this argument involved attempts by a non-party subsidiary to remove cases to federal court filed against a party-parent company. *See Jana Master Fund, Ltd. v. JP Morgan Chase & Co.,* 490 F.Supp.2d 325 (S.D.N.Y.2007); *American Home Assurance Co. v. RJR Nabisco Holdings Corp.,* 70 F.Supp.2d 296 (S.D.N.Y.1999).[17] One of several distinguishing features of *Jana* and *American Home* is that in both cases, the plaintiff properly sued the parent company (which was a valid and existing legal entity), but

---

**16.** This case was removable regardless of whether the City intended to sue the parent or subsidiary, i.e., this is not a case where one entity faced a jurisdictional obstacle that the other did not, and therefore Bear Stearns had no incentive to file its removal on behalf of one entity as opposed to the other.

**17.** As explained *infra,* both *Jana* and *American Home* involved facts and legal issues that differ markedly from the case at bar, and were decided on narrow grounds that make them irrelevant to the disposition of this case. The Court does not read either case as standing for the broad proposition asserted by the City in this case.

only the nonparty subsidiary attempted the removal. *See Jana,* 490 F.Supp.2d at 326; *American Home,* 70 F.Supp.2d at 298. Here, the entity sued by the City, The Bear Stearns Companies, is not a parent or a subsidiary; it does not exist. Accordingly, no parent/subsidiary issue is present.[18] Under the City's logic, Bear Stearns simply could not remove the case by virtue of the City's having named a non-existent entity, for which, by definition, no individual had authority to act. For all the reasons explained *supra,* this is an obvious *non sequitur,* and acceptance of the City's position would produce a patently absurd result by rewarding the City for its own pleading errors and ambiguities. Bear Stearns's removal was proper.

### 2. Credit Suisse

Like its argument regarding Bear Stearns, the City contends that the consent filed by defendant Credit Suisse was invalid because the individual who signed the form lacked authority to do so. And, like the City's Bear Stearns argument, this one suffers from many of the same flaws.

In its complaint, the City named "Credit Suisse (USA)" as a defendant. No such legal entity exists.[19] Credit Suisse (USA), Inc. ("CSUI"), is a legal entity, and it is the parent company of Credit Suisse Securities (USA) LLC ("CSS"). In removing the case, Credit Suisse submitted a written consent to removal signed by R. Colby Allsbrook, "Vice President and Counsel, Credit Suisse (USA), Inc." Mr. Allsbrook in fact holds the title of Vice President and Counsel with CSS, not with CSUI. However, Allsbrook submitted a declaration stating that he possessed authority to act on behalf of CSUI.[20]

▮ Fundamentally, the City fails to establish by competent evidence its contention that Mr. Allsbrook, who signed the consent form filed by Credit Suisse, lacked authority to do so. Based upon Allsbrook's declaration, as well as the sworn interrogatory responses by D. Neil Radey, Managing Director and General Counsel of CSUI, the Court finds that Allsbrook possessed authority to remove the case. Ac-

---

**18.** And in any event, as previously explained, Taub had authority to remove on behalf of both the parent and the subsidiary.

**19.** Accordingly, the City's position would suffer from all the same problems as its argument regarding Bear Stearns, discussed *supra,* based upon its failure to name an existing legal entity. Fortunately, the City declined to assert the same circular and nonsensical objections with regard to Credit Suisse, electing to challenge only the authority of Mr. Allsbrook to consent to removal.

**20.** Allsbrook initially submitted a declaration describing himself as "Vice President and Counsel of Credit Suisse (USA), Inc." (Doc. No. 132–4.) Credit Suisse later filed a motion to withdraw Allsbrook's initial declaration and substitute an amended one reflecting Mr. Allsbrook's title as Vice President and Counsel of CSS. (Doc. No. 162.) In the motion to substitute, Credit Suisse describes this as "a technical error made in good faith [which] does not impair Mr. Allsbrook's authority to

act as legal counsel for CSUI and consent to removal on its behalf." The City has not opposed the motion to substitute, but does attempt to spin this as a nefarious effort by Credit Suisse to validate its removal by ascribing credentials to Allsbrook that he did not possess. (Doc. No. 163, at 13.) In addition to Mr. Allsbrook's declaration describing his authority, the Court has also received Credit Suisse's interrogatory responses sworn to by D. Neil Radey, General Counsel of CSUI, in which he attests to Allsbrook's authority to remove the action to federal court on behalf of CSUI. (Doc. No. 163–2, at 6.) The Court hereby grants Credit Suisse's unopposed motion to substitute Allsbrook's amended declaration. In addition, based upon Allsbrook's declaration and Radey's answers to interrogatories, and the absence of evidence to the contrary, the Court finds that Allsbrook in fact possessed authority to remove the case on behalf of CSUI.

cordingly, Credit Suisse validly consented to removal.

### 3. Citigroup

The City also challenges the consent to removal signed by Edward Turan on behalf of Citigroup. The City bases its challenge on the fact that Turan is an employee of a Citigroup subsidiary, not of the parent company. Citigroup, Inc., the party sued by the City, is a valid and existing legal entity, so unlike the argument with respect to Bear Stearns, this argument comes much closer to presenting the parent/subsidiary issue for which the City cited the *Jana* and *American Home* cases.[21] Both cases, however, are distinguishable.

In *Jana*, the plaintiffs filed suit in state court against JP Morgan Chase & Co., ("Chase & Co."), Chase Securities, Inc., and several individual employees, directors or officers of various Chase corporations. 490 F.Supp.2d at 326. Subsequently, JP Morgan Chase, N.A. ("Chase, N.A."), which was not a party to the suit, filed and served a notice of removal, asserting federal question jurisdiction under the Edge Act, 12 U.S.C. § 611 *et seq.* Chase, N.A. claimed that Chase & Co. was "errantly" named as a defendant, and that it was the real party in interest. *Id.* Chase & Co. was a holding company organized under Delaware law, and was the parent of Chase, N.A., which was a bank organized under the laws of the United States. *Id.* at 328. Chase, N.A.'s ability to remove the case to federal court implicated issues of subject matter jurisdiction. Specifically, because jurisdiction was based upon a federal question under the Edge Act, and jurisdiction under the Edge Act required, as a statutory matter, that a party to the

action be organized under the laws of the United States, the case was only removable if Chase, N.A. was a party. The district court found that the plaintiffs intentionally chose not to name Chase, N.A., and that Chase, N.A. failed to demonstrate that it was a party to the action, "either as a 'real party in interest' or otherwise." *Id.* at 330–31. Consequently, the court had no basis for exercising subject matter jurisdiction, and granted the plaintiffs' motion to remand.

*American Home*, like *Jana*, also involved issues of subject matter jurisdiction not present in this case. There, the plaintiff sued several entities, including RJR Nabisco, Inc., and RJR Nabisco Holdings Corp. The plaintiff, American Home, and both named defendants, RJR Nabisco, Inc., and RJR Nabisco Holdings Corp., all were citizens of New York. *Id.* at 298. Non-party Nabisco sought to remove the case from state to federal court. The district court first held that remand was necessary because RJR Nabisco, Inc., and RJR Nabisco Holdings Corp., the two entities named in the insurance contract subject to suit, were more than nominal defendants, and therefore complete diversity was lacking and the court was without subject matter jurisdiction. *Id.* The court also added that a non-party (like Nabisco) claiming to be the real party in interest could not remove the case because, under the removal statute, 28 U.S.C. § 1441, only a defendant could do so.[22] 70 F.Supp.2d at 298–99.

The instant case has little in common with *Jana* or *American Home*, both of which clearly were decided on jurisdictional grounds. This Court has independent subject matter jurisdiction over the parties

---

21. *See supra,* section II.A.2.c.ii.1.

22. Because the court in *American Home* first concluded that it lacked subject matter juris-

diction, its subsequent discussion of the ability to effect removal of a non-party claiming to be a real party in interest is *dicta.*

named in the complaint based upon diversity. This case does not involve a non-party subsidiary claiming that it, rather than its parent, is the real party in interest (for purposes of conferring jurisdiction or otherwise). The issue before this Court is whether Mr. Turan, who consented to removal on behalf of defendant Citigroup, had authority to do so. Neither *Jana* nor *American Home* speaks to this issue; those courts did not inquire into the authority possessed by the individual authorizing removal.

The undisputed evidence establishes that Turan, although holding a title with a non-party subsidiary, was authorized by the party defendant, Citigroup, Inc., to remove the case. Turan's authority is established not only by his declaration (Turan Decl., Doc. No. 132–4, at 5 ¶ 4), but also by the declaration of Michael Helfer, general counsel for Citigroup, Inc., verifying Turan's authority. (Helfer Decl., Doc. No. 167–3, ¶¶ 4, 6.) The City has provided no contrary evidence. The Court finds that Turan indeed possessed authority to remove the case on behalf of Citigroup. The removal statute allows a defendant to remove a case. Here, Citigroup, the named defendant, authorized Mr. Turan to act on its behalf in consenting to removal. No authority suggests that an individual holding a title with a subsidiary but authorized to act on behalf of the parent may not authorize removal on the parent's behalf. Accordingly, Citigroup's consent to removal was valid and effective.

### 4. Option One

■ The City's objection to the consent filed by Option One is totally baseless. Option One's consent was filed by its Associate General Counsel and Litigation Manager, Debra Jameson. In its discovery responses, sworn to by Ms. Jameson, Option One responded that Jameson in fact possessed authority to consent to removal on behalf of Option One, and "did not receive a directive from another individual or solicit the permission of another individual before consenting to the removal[,]" but that, by virtue of her position, Jameson possessed "the necessary authority to consent to the removal of actions to which Option One is a party and exercised that authority in consenting to the removal of this action." (Doc. No. 163–7.) In a separate declaration, Option One's General Counsel, William Smith, stated that he "authorized Debra Jameson, Associate General Counsel of Option One, to execute a consent to removal on behalf of Option One." (Smith Decl., Doc. No. 132–4, at 14 ¶¶ 2, 4.)

Combining Option One's answers to interrogatories and the Smith declaration, the City somehow fashions an argument that the two are inconsistent, and therefore, should not be believed. The only way this argument makes any sense, however, is if one reads into Smith's declaration a temporal limitation which it does not contain. Specifically, only if Smith had stated that after being informed of this specific litigation and being asked by Jameson for authority to consent to removal did he grant Jameson such authority, would the two statements be inconsistent. As it stands, however, the statement actually made by Smith in his declaration merely supports Jameson's testimony that she possessed the authority, as Option One's Associate General Counsel and Litigation Manager, to consent to jurisdiction on behalf of the company. The uncontroverted evidence establishes that Jameson possessed authority to remove the case on behalf of Option One, and its removal, therefore, was valid.

Finding all of the City's arguments in support of its motion to remand to be without merit, the Court denies the motion.

## B. Motion for Leave to Amend

 Whether to permit leave to amend the pleadings ordinarily is governed by Rule 15, which provides that, after the defendant files a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The decision whether to permit the amendment is committed to the discretion of the trial court. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330–32, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Estes v. Ky. Util. Co.,* 636 F.2d 1131, 1133 (6th Cir. 1980). The trial court's discretion is, however, "limited by Fed.R.Civ.P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.,* 830 F.2d 68, 69 (6th Cir.1987) (citation omitted). "In the decision whether to permit an amendment, some of the factors which may be considered by the trial court are undue 'delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.'" *Gen. Elec. Co. v. Sargent & Lundy,* 916 F.2d 1119, 1130 (6th Cir.1990) (quoting *Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479, 484 (6th Cir.1973)).

 This case is here on diversity jurisdiction, which requires complete diversity. 28 U.S.C. § 1441(b). Diversity jurisdiction exists only when no plaintiff and no defendant are citizens of the same state. *See United States Fidelity and Guar. Co. v. Thomas Solvent Co.,* 955 F.2d 1085, 1089 (6th Cir.1992). For jurisdictional pur-

poses, the City is a citizen of Ohio. Based on the operative complaint, no defendant is a citizen of Ohio, so the parties are completely diverse, and this Court has subject matter jurisdiction. However, the party the City seeks to add by way of its amended complaint, JP Morgan, also is a citizen of Ohio, and its joinder therefore would destroy the Court's diversity jurisdiction.

 Congress has provided expressly for such circumstances. "If after removal, the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the Court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). "The general impetus for applying § 1447(e) is for the trial court to use its discretion and determine if allowing joinder would be fair and equitable." *Harmon v. McCreary,* No. 07–3–DLB, 2007 WL 4163879, at *3 (E.D.Ky. Nov. 20, 2007) (citing *Jones v. Woodmen Accident & Life Co.,* 112 F.Supp.2d 676, 680 (N.D.Ohio 2000)). Although the Sixth Circuit has issued little guidance regarding § 1447(e),[23] the cases generally agree that courts should consider the following factors: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in seeking amendment; (3) whether the plaintiff will be significantly prejudiced if amendment is not allowed; and (4) any other equitable factors. *Mayes v. Rapoport,* 198 F.3d 457, 461–63 (4th Cir.1999); *Hensgens v. Deere & Co.,* 833 F.2d 1179, 1182 (5th Cir.1987);[24] *Siedlik v. Stanley Works, Inc.,* 205 F.Supp.2d 762, 765 (E.D.Mich.2002); *Woodmen,* 112 F.Supp.2d at 680. Of the relevant factors, the first appears to be of paramount importance. *J. Lewis Cooper Co. v. Diageo*

**23.** This is commonly and appropriately attributed to the fact that orders remanding removed cases for lack of jurisdiction generally are not appealable. *See* 28 U.S.C. § 1447(d).

**24.** *Hensgens* was decided before the enactment of 1447(e), but the analysis remains applicable.

*N. Am., Inc.,* 370 F.Supp.2d 613, 618 (E.D.Mich.2005) ("These factors [. . .] are intended to answer the ultimate question whether the primary purpose of the proposed joinder is to oust the case from the federal forum."); *Roberts v. Standard Ins. Co.,* No. 04 C 2027, 2004 WL 2367741, at *5 (N.D.Ill. Oct. 15, 2004) ("The motive of the party seeking to amend a complaint is considered to be the most important factor [. . .]."); *Boyd v. Diebold, Inc.,* 97 F.R.D. 720, 723 (E.D.Mich.1983) ("In cases where joinder will necessitate a remand to state court, the Court should pay particular attention to the motive underlying the plaintiff's motion to amend.")

 The four factor analysis is designed to aid a court in determining whether a motion to amend has been filed for an improper purpose. *J. Lewis Cooper,* 370 F.Supp.2d at 618. Here, unlike in any other case of which the Court is aware, the party seeking leave to amend candidly admits that the motion's aim is to defeat diversity jurisdiction. "The City readily acknowledges that it wants to join JP Morgan Chase Bank largely in order to secure remand of the case to the Cuyahoga County Court of Common Pleas." (Pl.'s Br. in Support of Mot. to Amend, at 7–8.) In light of this admission, the first and most important factor weighs heavily in favor of Defendants, and the City's motion simply cannot survive scrutiny.[25]

That the City did not delay, and brought its motion to amend soon after the complaint was filed, does nothing to disguise its true motivations for seeking to add JP Morgan as a defendant. Nor does it affect the balance of the equities, which weigh heavily in favor of denying the motion.

Likewise, prejudice considerations offer no support for the City's position. Denying a party's efforts at what it admits is blatant forum shopping does not constitute prejudice. The City's prejudice argument (to the extent it asserts one), and indeed, its entire motion, is premised upon its erroneous belief that it has an enduring right to litigate this case in state court, federal removal statutes notwithstanding.[26] It has no such entitlement. The City possesses no greater right to a state forum than would any other plaintiff under identical circumstances. The case was removed timely and appropriately by diverse defendants, and this Court has subject matter jurisdiction. The City's concession that it seeks leave to amend for the purpose of destroying this Court's jurisdiction and obtaining remand to state court effectively dooms its motion.[27]

Analysis of the relevant factors leads inexorably to the conclusion that allowing the City to join JP Morgan as a defendant would be grossly inequitable, and unfairly would reward the City for its unabashed

---

**25.** Notably, the City failed to cite a single case in which a court found that the moving party's motive for adding a defendant was to destroy diversity jurisdiction, but nevertheless permitted the amendment and remanded the case. The Court's independent research revealed no such cases.

**26.** The City's arguments in support of its motion for leave to amend frequently circle back to its contention that the case was removed improperly. The Court has determined, however, as discussed *supra* in section II.A., that Defendants properly removed the case to federal court.

**27.** The City simply misses the mark when it invokes the fraudulent joinder analysis. Fraudulent joinder describes the situation where a plaintiff names non-diverse nominal or irrelevant parties as defendants to prevent removal in the first instance. *See Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.,* 176 F.3d 904, 907 (6th Cir.1999). In direct contrast to the § 1447(e) analysis, a party's motive for joining a non-diverse party is irrelevant for purposes of fraudulent joinder. Instead, the inquiry focuses on whether a colorable cause of action is asserted against the party allegedly fraudulently joined.

forum shopping efforts. The Court cannot sanction such a result. Consequently, the Court exercises its discretion under 28 U.S.C. § 1447(e) to deny the City's motion to amend.

## III. Conclusion

For the foregoing reasons, the City's motion to remand (Doc. No. 5) is **DE-NIED,** as is its motion for leave to amend the complaint (Doc. No. 74).[28] Because the Court herein addressed all of the City's arguments in support of the motion to remand, the City's motion to withdraw its second and third supplemental memoranda (Doc. No. 161) is **MOOT.** Credit Suisse's unopposed motion to withdraw and substitute declarations of R. Colby Allsbrook (Doc. No. 162) is **GRANTED.** The case shall proceed in accordance with the schedule set forth in the Case Management Plan. (*See* Doc. No. 159.)

**IT IS SO ORDERED.**

---

28. Doc. No. 72 is a duplicate of Doc. No. 74. The latter apparently was filed to correct an error in the former. Doc. No. 72 also should be terminated.